**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0047-17T1

C.S.,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued October 24, 2018 – Decided June 6, 2019

Before Judges Nugent and Reisner.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-10-275988.

Samuel Michael Gaylord argued the cause for appellants (Gaylord Popp, LLC, attorneys; Samuel Michael Gaylord, on the brief).

Thomas Robert Hower, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Christina Cella, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner, C.S., a member of the Public Employees' Retirement System (PERS), appeals from the final administrative determination of the PERS Board of Trustees (PERS Board or Board), which adopted the Initial Decision of an Administrative Law Judge (ALJ) that denied petitioner's application for accidental disability retirement benefits. The ALJ and Board denied petitioner's application after concluding petitioner's disability resulted from a preexisting condition alone or in combination with work events, thus disqualifying her for accidental disability benefits. Because the Board's decision is not arbitrary or capricious, we affirm.

Petitioner, a special education aide, had been employed by the Princeton Public School District for approximately fifteen years when she filed for accidental disability retirement benefits. The Board denied her application but granted her ordinary retirement benefits. She filed an administrative appeal and the matter was transferred to the Office of Administrative Law (OAL) as a contested case. Hearings were conducted before an ALJ, who retired before rendering a decision. Another ALJ rendered a decision upholding the denial of

petitioner's application.[1]  Exceptions were filed, the Board upheld the decision, and this appeal followed.

During the OAL hearing, petitioner recounted the incident that she claimed precipitated her retirement.  Petitioner was working with an autistic student, whom she described as approximately six feet tall with broad shoulders.  The student said he was going to kill another teacher.  Petitioner calmed the student and took him to the school psychologist's office.  There, the student described for the psychologist how he was going to push the other teacher into an empty classroom and smash her head against a brick wall.

As the psychologist was responding, the student said, "[a]nd I'm going to do it now."  He stood up and started toward the door.  Petitioner and the psychologist, a petite woman, attempted to block the student, who pushed them both against an office wall.  The psychologist yelled to petitioner to leave and get help.  Petitioner did, but envisioned horrible things happening to the psychologist.  A gym teacher and others arrived and escorted the student to the main office, where petitioner waited with him until the police arrived.

---

[1]  According to the ALJ's Initial Decision, "the parties agreed to have the [second ALJ] render a decision on the record."

A-0047-17T1

Petitioner testified she was never the same after the incident. During the incident, she experienced a terrible fear for her own life and a greater fear for the psychologist's life. Eventually, she was unable to return to school.

The incident with the autistic child occurred on November 30, 2011. With the exception of two accidents in which petitioner injured her shoulder and her back, requiring her to take time to recuperate, she worked until March 19, 2012. She never returned to school after that day.

Two experts testified at the OAL hearing. Petitioner presented the testimony of a psychiatrist who had been treating her for a mood disorder and major depressive disorder for approximately ten years before the incident with the autistic child. The psychiatrist had treated petitioner with medications such as antidepressants, mood stabilizers, anxiety relieving medications, and psychotherapy. The treatment was effective, for petitioner had no difficulty performing her job. The doctor said she performed her job diligently and rarely missed work, never because of job stress.

The psychiatrist opined that petitioner developed Post-Traumatic Stress Disorder (PTSD) following the November 2011 incident. He explained that the development was gradual. He further explained that petitioner was stressed but tried her best to continue working. She began to develop symptoms of insomnia,

4

severe sleep disturbance, and disorganized thought. Some months later, she began to have flashbacks of the incident.

The psychiatrist also testified that petitioner sustained physical injuries in January and March 2012, which contributed to the considerable stress she was experiencing from the November 2011 incident. Because her emotional condition was so fragile, he recommended that she take a leave of absence. The doctor described petitioner as frazzled, overwhelmed, and unable to think straight. He opined that her condition was a result of a combination of the physical injuries and the emotional injury she had sustained.

In summary, petitioner's psychiatrist testified she suffered from disabling PTSD following the November 2011 incident with the autistic child. Although the stressors following her physical injuries may have been contributing factors, the doctor opined, within a reasonable degree of medical certainty, the November 2011 incident was the triggering factor and substantial cause of petitioner's PTSD, which has resulted in petitioner's total disability.

The Board presented the testimony of a psychologist who examined petitioner once, in November 2012, nearly four years before the hearing. The psychologist recounted petitioner's history of mental health issues, including her hospitalizations in 1990, and the history of treatment with her psychiatrist. In

5

the psychologist's opinion, petitioner did not suffer from PTSD; rather, she suffered from Major Depressive Disorder.

Based upon his review of petitioner's records, his clinical examination, and petitioner's responses to a Personality Assessment Inventory, the psychologist judged the petitioner's depression to be recurrent and moderate. Although petitioner's responses to the Personality Assessment Inventory included features of PTSD, the psychologist did not feel that it was clear she met all the criteria for PTSD.

The psychologist did believe petitioner was totally and permanently disabled from performing her duties as a special education aide, but he attributed the cause of her disability to her previous major depressive disorder. The November 2011 incident with the autistic child was, in his opinion, not a significant or substantial cause of her disability. He pointed out that after the November 2011 incident, petitioner was hurt at work twice, once when she injured her back lifting books, and once when she was knocked down by a student. In his opinion, the November 2011 incident and the two subsequent incidents involving physical trauma accelerated petitioner's preexisting major depressive disorder.

6

The ALJ found the testimony of petitioner's psychiatrist – that petitioner suffered PTSD as a result of the November 30, 2011 incident – not to be credible. The ALJ found the testimony of the Board's psychologist – that petitioner's current condition was preexisting – credible. Based on these credibility determinations, the ALJ found as a fact that though petitioner was totally and permanently disabled, her condition was preexisting and not the result of the November 30, 2011 incident. The Board adopted the ALJ's decision. Petitioner filed this appeal.

We have limited authority when we review a final decision of the PERS Board. See In re Stallworth, 208 N.J. 182, 194 (2011). We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Ibid. (quoting In re Carter, 191 N.J. 474, 483 (2007)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or ... not supported by substantial credible evidence in the record as a whole.'" Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). The burden of proving an agency action is arbitrary, capricious, or unreasonable is on the party challenging the agency's decision. Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div.

7

2011) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

A member of PERS is eligible for accidental disability retirement if the member "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." N.J.S.A. 43:15A-43. If a member claims to suffer from a permanent mental incapacity due solely to psychological trauma, the member must make a threshold showing

> that his or her disability results "from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person," and that the event is "not inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury."
>
> [Mount v. Board of Trustees, Police and Firemen's Retirement System, 233 N.J. 402, 407 (2018) (quoting Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29, 34 (2008)).]

If a member does not satisfy this threshold requirement, the Board must deny the application for accidental disability benefits. Ibid. If a member satisfies this threshold requirement, the member must then satisfy the requirements announced in Richardson v. Board of Trustees, Police and

Firemen's Retirement System, 192 N.J. 189, 212-13 (2007) and reiterated in Brooks v. Board of Trustees, Public Employees' Retirement System, 425 N.J. Super. 277, 281 (App. Div. 2012). Mount, 233 N.J. at 407. The Richardson requirements are:

> 1. that [the member] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>    a. identifiable as to time and place,
>    b. undesigned and unexpected, and
>    c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [Richardson, 192 N.J. at 212-13.]

In her first argument on appeal, petitioner asserts this case turns on the credibility of the experts, who gave contrasting opinions as to whether she was permanently and totally disabled as a direct result of the November 30, 2011 incident. She argues extensively that her expert psychiatrist's testimony was

more credible than that of the Board's expert psychologist and the ALJ erred by finding to the contrary.

It is important for petitioner to understand that "[w]hen error in factfinding of a judge or administrative agency is alleged, the scope of appellate review is limited. We will decide whether the findings made could reasonably have been reached on 'sufficient' or 'substantial' credible evidence present in the record considering the proofs as a whole." Cannuscio v. Claridge Hotel and Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). "Appellate review does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered at trial." Ibid. (citing State v. Johnson, 42 N.J. 146, 161 (1964)). We give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." Close, 44 N.J. at 599. In addition, "in the case of agency review, we give due regard . . . to the agency's expertise where such expertise is a pertinent factor." Ibid.

Here, the ALJ's credibility determinations, adopted by the Board, were supported by ample evidence in the record. Petitioner had a significant history of major depression that predated the November 2011 incident. She worked for

A-0047-17T1

more than three months following the incident with the autistic student, except for time she needed to recuperate from two subsequent incidents that caused her physical trauma. These subsequent incidents, according to petitioner's expert, contributed to her stress. It was only after the second incident involving physical trauma that petitioner's psychiatrist recommended she take a leave of absence. She did. She never returned to her job.

Considering these facts, and adhering to our limited standard of review, we cannot say the Board's final administrative determination, supported as it was by ample evidence in the record, was arbitrary, capricious, or unreasonable. Consequently, we must reject petitioner's first argument. Stallworth, 208 N.J. at 194.

In view of our disposition of petitioner's first argument, we need not address her second, that is, she made the threshold showing required of PERS members seeking accidental disability retirement benefits based on a permanent mental incapacity due solely to psychological trauma.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION